1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GWEN M. GARCIA, | ) | 1:07-cv-00018 AWI GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PLAINTIFF'S |
| v. | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | (Docs. 25 and 26) |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Gwen M. Garcia ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for disability

insurance benefits and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of

the Social Security Act.  The matter is currently before the Court on the parties' briefs in support

of their cross-motions for summary judgment, which were submitted, without oral argument, to

the Honorable Gary S. Austin, United States Magistrate Judge, for findings and recommendation

to the District Court.

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff protectively filed for disability insurance benefits and SSI on March 5, 2004. AR 77-80, 313-316.  She alleged disability since February 14, 2003, due to diarrhea, vomiting, hemorrhoids and migraines.  AR 77-80, 84.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 50-54, 57-62, 63-67.  On May 2, 2006, ALJ James Berry held a hearing.  AR 319-340.  ALJ Berry denied benefits on August 23, 2006.  AR 10-18.  On November 6, 2006, the Appeals Council denied review.  AR 4-6.

Hearing Testimony

On May 2, 2006, ALJ Berry held a hearing in Fresno, California.  AR 319-340.  Plaintiff appeared with her attorney, Robert Ishikawa.  AR 321.  Vocational expert ("VE") Judith Najarian also appeared and testified.  AR 321, 337-340.

Plaintiff was born on November 20, 1968, and was 37 years old at the time of the hearing. AR 322.  She completed the 12th grade.  AR 322.

Plaintiff testified that she last worked in February 2003.  AR 323.  She did clerical receptionist work at a doctor's office.  AR 323.  She worked there for about nine months, but stopped because she was in the bathroom for long amounts of time and could not be at her desk to answer phones.  AR 323.  She was coming in late and leaving because she was vomiting in the bathroom for 45 minutes to an hour or more at a time.  AR 323-324. They had to let her go because she could not fulfill her job duties.  AR 324.  In an average week, she would be in the bathroom vomiting at least 20 times.  AR 324.  Sometimes she had to call in sick because she vomited from 5:00 in the morning until noon and was not able to go to work.  AR 324.

Prior to her job as a receptionist, she did customer service work for an insurance company.  AR 324.  That job lasted a little over two years.  AR 324.  Prior to that job, she also did customer service.  AR 324.

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she was an administrative assistant at a temporary employment agency. AR 324-325. She was there for about nine months to "almost a year." AR 325. It was clerical work. AR 325. Prior to that, she worked at another insurance company in customer service, answering the phones, routing calls, and doing data entry. AR 325. She worked there approximately four years. AR 325. Before that, she worked at a medical group as a receptionist for a little more than a year. AR 325. She worked at another medical group as a receptionist for approximately a year and a half. AR 325. Prior to that, she was a cashier at a drug store and also stocked shelves. AR 325. The heaviest thing she had to lift was "a couple pounds." AR 326. She was on her feet all day. AR 326. She also worked at a title company doing clerical work. AR 326. Plaintiff explained that she switched jobs so often as she was let go from a number of them because of her absences due to illnesses. AR 326.

Plaintiff testified that she still has problems with vomiting. AR 326. She vomits everyday an average of five or six times. AR 326. It is not always immediately after she eats. AR 326. It does not matter if she has eaten. AR 326. She will throw up "just bile" because she is "unable to eat for days at a time." AR 326-327.

Plaintiff testified that she has diarrhea everyday, "all the time." AR 327. She spends the majority of her time in the bathroom. AR 327. She has diarrhea every ten to fifteen minutes. AR 327. It is like she can "never, ever finish going." AR 327. She has accidents. AR 327. It is very painful and caused her hemorrhoids to "be out of control and painful and bleed all the time." AR 327.

Plaintiff testified that she has migraine headaches three or four days per week. AR 327. They last all day. AR 327. When she has a migraine, she lies down. AR 327. If she is not vomiting, she is able to "take something." AR 328. If she does not take something, then she has to go to the hospital. AR 328.

Plaintiff testified that she has gastrointestinal reflux disease. AR 328. She has a lot of burning and upset in her stomach. AR 328. There are very limited things that she can eat because her stomach is sick and upset all the time. AR 328.

Plaintiff also testified that she has fatigue.  AR 328.  She cannot care for herself.  AR 328. She cannot take care of her home and cannot do her shopping.  AR 328.  She sometimes can barely walk because her joints hurt.  AR 328.  She aches and is in pain all the time.  AR 328. Pain pills do not always help because of her stomach.  AR 328.

Plaintiff testified that Dr. Senta Vonyes told her she has fibromyalgia.  AR 328-329.  He said that is why she has so much pain in her joints and in her back.  AR 329.  She feels her limbs are getting weaker.  AR 329.  She has chills or fever when she is sitting at the toilet, when she is vomiting and having diarrhea at the same time.  AR 329.  This has been going on for three or four years.  AR 329.  It is getting worse.  AR 329.

During the daytime, she is in bed and in the bathroom.  AR 329.  She lies down, but is not at rest because she always is being awakened by nausea.  AR 329.  She has to run to the bathroom.  AR 329.  She does not sleep for long, but is in bed because it hurts to sit down and she cannot stand up because her legs hurt.  AR 329-330.

Plaintiff testified that it hurts to sit down due to pain from hemorrhoids and "non-stop diarrhea."  AR 330.  She wanted to have surgery on them, but the surgeon told her that she would be completely incontinent and there is nothing he can do unless she gets rid of her diarrhea.  AR 330.  She can sit comfortably for maybe ten minutes.  AR 330.  She has a lot of back pain.  AR 330.  She testified that she was hurting during the hearing.  AR 330.  She can stand for maybe ten minutes.  AR 330.  After that, her legs will give out on her.  AR 330.  She cannot stand up to cook.  AR 330.  She will try to walk and her leg will give out on her.  AR 330.

Plaintiff testified that the heaviest thing that she could lift and carry was maybe two pounds.  AR 330.  She is very weak because she has diarrhea all the time.  AR 330-331.

Plaintiff lives alone in an apartment.  AR 331.  She has a friend that comes after work to bring her food and to clean her house.  AR 331.  She does not cook for herself.  AR 331.  Her mom gets all the groceries for her.  AR 331.  She had state disability benefits, but they ran out. AR 331.  She no longer has any income.  AR 331.

Plaintiff testified that she does not do any housecleaning and does not wash clothes.  AR 331-332.  Her friend and her mom help her.  AR 332.  She has someone coming to her house

everyday or every other day.  AR 332.  Her mom drives her to the doctor.  AR 332.  Her doctor is "Dr. Senta Vonyes."  AR 332.  She has been seeing him a little over three years.  AR 332.  He is associated with Central Valley General Hospital.  AR 332.  She sees him through the clinic at the hospital.  AR 332.

Plaintiff testified that she cannot go out socially because of her diarrhea and stomach problems.  AR 332-333.  She does not feel well enough to go anywhere.  AR 333.  She sometimes watches TV or movies when she is in bed.  AR 333.  She never sits up in her living room.  AR 333.  She will sit to rest if she is on her way to the bathroom getting something to drink.  AR 333-334.

Plaintiff testified that she has Vicodin and SOMA for her pain and muscle spasms.  AR 334.  She takes Zantac for her acid reflux.  AR 334.  She takes Compazine and Phenergan for her vomiting and nausea and Xanax for her anxiety.  AR 334.  She has side effects from these medications.  AR 334.  The pain medication will make her vomit and make her upset stomach worse.  AR 334.  The Phenergan and Compazine will knock her out, but she will have to get up and to the bathroom, which is very difficult.  AR 334.

Plaintiff testified that she feels the problems are getting worse and MediCal does not pay for a lot of the medications that she may be able to try.  AR 334.  She does not have a social life or any activities that she can do.  AR 335.

Plaintiff also testified in response to questions from the ALJ.  AR 335.  Plaintiff testified that she is not married and does not have any children living with her.  AR 335.  Her mother has been paying the bills for the last three years.  AR 335.

Plaintiff testified that she could stand maybe 20 minutes during an eight-hour period.  AR 335.  She walks three or four feet to her bathroom at least 30 times a day.  AR 336.  She could not walk one city block.  AR 336.  She sometimes has to crawl to her bathroom.  AR 336.  She could not sit more than 15 minutes during an eight-hour period.  AR 336.  She has a lot of pain and it hurts really bad.  AR 336.  She has a driver's license, but does not drive.  AR 337.

VE Judith Najarian also testified.  AR 337.  The VE testified that Plaintiff's work as a receptionist is in the DOT as sedentary and semi-skilled, SVP 4.  AR 338.  Her work as a general

clerk is in the DOT as light and semi-skilled, SVP 3.  AR 338.  Her work as an insurance clerk is in the DOT as sedentary, 4, semi-skilled.  AR 338.  Her work as an administrative clerk is light, SVP 4, semi-skilled.  AR 338.  Her work as a pharmacy clerk is light, SVP 3, semi-skilled.  AR 338.  Her work as a title clerk is light and semi-skilled.  AR 338.  Her work with the insurance office and her work with one of the doctor's offices were medium as performed.  AR 338.

For the first hypothetical, the ALJ asked the VE to assume an individual 37 years of age with a 12th grade education and the past relevant work described by the VE.  AR 339.  This person had a combination of severe impairments and retained the residual functional capacity to lift and carry 50 pounds occasionally, 25 pounds frequently.  This person also retained the ability to stand, walk and sit six hours each.  AR 339.  The VE testified that this person could do all of Plaintiff's past work.  AR 339.

For the second hypothetical, the ALJ asked the VE to consider a hypothetical individual with the same vocational parameters listed in hypothetical one.  AR 339.  This person also had a combination of severe impairments and retained the residual functional capacity to lift and carry ten pounds maximum.  AR 339.  This individual could stand, walk and sit on-half hour total and could climb, stoop, kneel, crouch, balance and crawl occasionally.  AR 339.  The VE testified that this individual could not perform any of Plaintiff's past work.  AR 339.  This individual also could not perform any other jobs that exist in the national economy.  AR 339-340.

Medical Evidence

On August 26, 2002, Dr. Alvin Y. Au, M.D., F.A.G.C., of the Advance Digestive Medical Center, completed a gastroenterology consultation of Plaintiff.  AR 188-189.  On examination, Plaintiff was a well developed, well nourished middle aged female in no acute distress.  AR 189.  She weighed 107 pounds.  AR 189.  She had mild tenderness to palpation in the epigastric area and minimal tenderness in the left lower and right lower quadrants.  AR 189.  Dr. Au opined that Plaintiff had a history of two different GI symptoms: 1) epigastric burning pain that radiated to the chest, typical of gastroesophageal reflux and; and 2) lower GI Symptoms, probably irritable bowel syndrome.  AR 189.  Dr. Au recommended half a tablet of Robinul Forte and continued use of Nexium.  AR 189.

On August 28, 2002, Plaintiff sought treatment for complaints of painful, irregular periods, with a history of nausea, migraines and vomiting.  AR 185.  Plaintiff was assessed with P&P, metrorrhagia, dysmenorrhea, pelvic pain, irritable bowel syndrome and depression with anxiety and weightloss.  AR 185.  She was prescribed Paxil.  AR 185.

On August 29, 2002, a pelvic ultrasound was negative.  AR 226.

On September 16, 2002, Plaintiff underwent an esophago gastro duodenoscopy.  AR 187. Dr. Au diagnosed Plaintiff with gastritis and Grade 1 esophagitis.  AR 187.

On September 26, 2002, Plaintiff saw Pamela Madala, FNP, for hemorrhoids.  AR 186. Plaintiff reported that her diarrhea had slowed down.  AR 186.  She also denied any nausea, vomiting, bleeding or other pains.  AR 186.  On examination, Plaintiff weighed 105 pounds.  AR 186.  She was prescribed AcipHex.  AR 186.

On October 28, 2002, Plaintiff sought treatment for complaints of severe neck pain.  AR 151.  She was prescribed medication.  AR 151.

On January 6, 2003, Plaintiff saw Ying-Chien Lee, M.D., F.I.C.S.  AR 221-222.  Plaintiff reported that she always is bothered with some diarrhea.  AR 221.  She indicated there was no weight loss, but had frequent abdominal cramping problems.  AR 221.  On rectal examination, Plaintiff had mild external and moderate internal hemorrhoids.  AR 222.  Dr. Lee diagnosed Plaintiff with mild to moderate hemorrhoids and irritable bowel syndrome.  AR 222.

On February 14, 2003, Plaintiff sought treatment for her irritable bowel syndrome.  AR 220.  Plaintiff reported being stressed and missing work due to irritable bowel syndrome.  AR 220.  Plaintiff was diagnosed with irritable bowel syndrome, anxiety and depression.  AR 220. The provider opined that Plaintiff had total temporary disability until her recheck in 2 weeks. AR 220.

On February 28, 2003, Plaintiff sought treatment for irritable bowel syndrome.  AR 219. She was diagnosed with hemorrhoids, irritable bowel syndrome, anxiety, insomnia and depression.  AR 219.  She was prescribed Paxil.  AR 219.  Progress notes indicated that Plaintiff should continue off work until March 20, 2003.  AR 219.

On March 20, 2003, Plaintiff sought treatment for anxiety.  AR 217.  She reported nausea with eating.  AR 217.  She was prescribed Xanax.  AR 217.  Procedure notes indicated that Plaintiff had her gallbladder removed.  AR 217.  On the same date, a view of Plaintiff's abdomen showed no significant abnormality.  AR 218.

On April 3, 2003, Plaintiff sought treatment for anxiety and allergies.  AR 216.  She was diagnosed with irritable bowel syndrome.  AR 216.

On April 25, 2003, Plaintiff sought treatment for complaints of nausea and follow-up of her irritable bowel syndrome.  AR 215.  She was diagnosed with diarrhea and irritable bowel syndrome, nausea and dysmenorrhea.  AR 215.  She was prescribed medications, including Phenergan.  AR 215.

On June 10, 2003, Plaintiff sought follow-up treatment for anxiety and irritable bowel syndrome.  AR 206.

On September 10, 2003, Plaintiff sought treatment for chronic diarrhea and nausea.  AR 176.  She was prescribed medications, including Protonix, Zoloft, Nupercainal ointment, Donnatal and Celebrex.  AR 176.

On September 23, 2003, Plaintiff received treatment at the Health Valley Medical Group Inc. for complaints of diarrhea.  AR 173.

On September 24, 2003, Plaintiff sought treatment for complaints of nausea and vomiting.  AR 166.  An abdominal ultrasound was normal, status post cholecystectomy.  AR 167.

On September 29, 2003, Plaintiff underwent a scan of her pelvis due to lower abdominal pain, emesis and nausea.  AR 159.  Plaintiff's bladder was unremarkable, no ovarian masses were detected and the bowel loops were normal in caliber.  AR 159.  Plaintiff had the "possibility of a single slightly thick walled loop of small bowel in the left lower quadrant."  AR 159.  She also had a left gluteal injection granuloma.  AR 159.  A scan of her abdomen revealed a normal liver and an unremarkable spleen and pancreas.  AR 160.  Her gallbladder appeared to have been removed.  AR 160.  She was status post cholecystectomy.  AR 160.

8

1   On October 1, 2003, a coccidioidal serology of Plaintiff was not positive to a diagnostic

2   level.  AR 158.

3   On October 2, 2003, Plaintiff sought medical treatment for rectal bleeding/hemorrhoids.

4   AR 156.  She was diagnosed with a superficial fissure of the right post anal canal with skin tag.

5   AR 156.

6   On December 2, 2003, Plaintiff underwent an X-ray of her lumbar spine and

7   sacrum/coccyx.  AR 155.  Plaintiff complained of back pain, a fall and tailbone pain.  AR 155.

8   She was diagnosed with mild hypolordosis, minimal levonconvex scoliosis of the

9   thoracic/lumbar spine and status post cholecystectomy.  AR 155.  She was negative for acute

10  displaced fracture or dislocation.  AR 155.

11  On February 12, 2004, Plaintiff sought treatment at Health Valley Medical Group, Inc. for

12  complaints of a burning feeling in her stomach and regurgitation.  AR 154.  An appointment was

13  made with Dr. Au and she was prescribed medications. AR 154.

14  On May 25, 2004, Plaintiff sought treatment for abdominal cramping and prolonged

15  diarrhea.  AR 209.  Plaintiff was diagnosed with GERD.  AR 209.

16  On June 2, 2004, Plaintiff underwent a radiological examination of her small bowel.  AR

17  184.  She was status post cholecystectomy, but had an otherwise unremarkable examination.  AR

18  184.

19  On June 8, 2004, Plaintiff sought treatment for shoulder and neck pain.  AR 207.

20  Plaintiff reported being in a motor vehicle accident in 1997 and having problems on and off since

21  that time.  AR 207.

22  On June 23, 2004, Plaintiff underwent a colonoscopy to the cecum and terminal ileum

23  with biopsy and esophagogastroduodenoscopy with biopsy.  AR 178.  Plaintiff was described to

24  have a history of gastric ulcer, gastroesophageal reflux symptoms and 2 to 3 years of chronic

25  diarrhea of unknown etiology with weight loss.  AR 178.  Plaintiff was reported to have an

26  antigliadin antibody but a gluten free diet did not really help her.  AR 178.  The procedures

27  revealed that Plaintiff had internal hemorrhoids and gastritis.  AR 179.  She otherwise had a

28  normal colonoscopy and normal upper endoscopy.  AR 179.  Specimens showed no significant

9

histologic abnormality with mild nonspecific reactive changes in her descending sigmoid colon. AR 180-181.

On June 15, 2004, Plaintiff sought treatment for complaints of shoulder and neck pain. AR 205.  On July 6, 2004, Plaintiff sought treatment for shoulder pain and neck adjustment.  AR 201.

On July 7, 2004, Plaintiff saw Nurse Practitioner Madala.  AR 200.  On examination, Plaintiff weighed 119 pounds and had diffuse abdominal pain.  AR 200.  She was diagnosed with GERD and diarrhea of unknown etiology.  AR 200.

On July 9, 2004, Plaintiff sought emergency treatment at Central Valley General Hospital for complaints of menstrual cramps.  AR 198.  On initial assessment, she had abdominal/pelvic pain and nausea.  AR 199.  She was prescribed Demerol, Phenergan and Torodol.  AR 199.

On July 14, 2004, Plaintiff received treatment from Nurse Practitioner Madala.  AR 196.  On examination, she weighed 114 pounds and was not in acute distress.  AR 196.  She was diagnosed with hemorrhoids and diarrhea.  AR 196.

On July 16, 2004, state agency medical consultant, Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment form.  AR 229-236.  Dr. Ginsburg opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without limitation, other than as shown for lift and/or carry.  AR 230.  She had no postural, manipulative, visual, communicative or environmental limitations.  AR 231-233.  On November 22, 2004, Murray Mitts, M.D., affirmed Dr. Ginsburg's assessment.  AR 229.

On August 14, 2004, Plaintiff sought emergency treatment for severe menstrual cramping with vomiting.  AR 192.  She was diagnosed with menstrual cramps and given Toradol.  AR 194.

On August 16, 2004, Carlos Santivanez, M.D., of Central Valley Health-Hanford, completed a prescription form, which stated:  "Patient is very well-known by my self.  She has Irritable Bowel Syndrome and at this time she is unable to work."  AR 190.

On October 6, 2004, Richard Ellsworth, D.O., of Kings Comprehensive Womens Healthcare Medical Group, Inc., provided information to the California Department of Social Services.  AR 225.  Dr. Ellsworth reported that Plaintiff had a history of migraine headaches, history of pelvic pain, history of imitable bowel syndrome, previous gallbladder removal and "some type of anxiety disorder for which she is on Paxil."  AR 225.

On October 15, 2004, Dr. Ellsworth provided updated information to the Department of Social Services regarding Plaintiff.  AR 224.  Dr. Ellsworth reported that Plaintiff was first seen by the nurse practitioner in August 2002.  AR 224.  At that time, she had depression, a history of irritable bowel syndrome, an element of pelvic pain and dysfunctional uterine bleeding.  AR 224.  She was placed on oral contraceptives.  In February 2003, she was switched to a patch for birth control and "did quite well on that."  AR 224.  In March 2004, Plaintiff was having pelvic pain, but an ultrasound was normal.  AR 224.  In June 2004, Plaintiff complained of progressive severe dysmenorrhea and persistent pelvic pain.  AR 224.  She had not been seen in Dr. Ellsworth's office since July 2004, when she was restarted on birth control pills.  AR 224.

On November 11, 2004, Plaintiff saw Dr. Santivanez.   AR 288.  She complained of a headache lasting 3 days.  AR 288.  Dr. Santivanez diagnosed her with a migraine.  AR 288.  The treatment plan included bed rest.  AR 288.

On December 9, 2004, Plaintiff sought treatment from Dr. Santivanez for complaints of nausea and other issues.  AR 281.  Dr. Santivanez diagnosed Plaintiff with fibromyalgia.  AR 281.

On December 23, 2004, Plaintiff saw Dr. Santivanez for complaints of dizziness, stomach ache and hip and joint pain.  AR 278.  Dr. Santivanez diagnosed fibromyalgia and IBS.  AR 278.  Plaintiff was prescribed Vicodin and other medication.  AR 278.

On January 3, 2005, Mary K. McDonald, Ph.D., completed a consultative psychological evaluation of Plaintiff.  AR 243-245.  Dr. McDonald administered the Wechsler Adult Memory Scale, III Edition.  AR 244.  Plaintiff obtained scores that were within the law average to average range of ability, which indicated no impairment in memory.  AR 244.  Dr. McDonald diagnosed Plaintiff as "Rule out malingering" and assigned her a Global Assessment of Functioning

("GAF") of 70.  AR 245.  Dr. McDonald opined that Plaintiff did not present with overwhelming depression that would preclude her ability to work.  AR 244.  Plaintiff had the ability to understand, carry out and remember simple instructions, respond appropriately to coworkers and supervisors, respond appropriately to safety and attendance and deal with changes in a routine work setting.  AR 245.  On January 3, 2005, Dr. McDonald also completed a Medical Source-Vendor Questions form and opined that Plaintiff was capable of handling funds in her best interests.  AR 247.

On January 7, 2005, Plaintiff saw Dr. Santivanez for follow-up on her dizziness and hip and leg pain.  AR 276.  She reported that she was doing fine.  AR 276.  On examination, Plaintiff had diffuse abdomen tenderness.  AR 276.  Dr. Santivanez diagnosed IBS, chronic back pain and GERD.  AR 276.

On January 11, 2005, Glenn Ikawa, M.D., a state agency physician, completed a Psychiatric Review Technique form.  AR 228.  Dr. Ikawa opined that Plaintiff had no medically determinable impairment.  AR 228.

On January 24, 2005, Plaintiff saw Dr. Santivanez for her IBS.  AR 274.  She was prescribed Xanax and Vicodin.  AR 274.

On March 10, 2005, Plaintiff sought treatment from Dr. Santivanez for complaints of irregular periods and neck pain.  AR 273.  Plaintiff reported increased diarrhea.  AR 273.  She was diagnosed with IBS and prescribed Zantac, Vicodin and Nexium.  AR 273.

On March 24, 2005, Plaintiff sought treatment from Dr. Santivanez.  AR 271.  Plaintiff complained of lower back pain.  AR 271.  She rated her pain as 2-3 on a scale of 1-10 while taking Vicodin.  AR 271.  Dr. Santivanez continued to prescribe Vicodin.  AR 271.

On April 18, 2005, Plaintiff saw Dr. Santivanez for complaints of vomiting.  AR 270.  Dr. Santivanez diagnosed IBS, back pain and anxiety.  AR 270.  He prescribed Vicodin and Xanex.  AR 270.

On May 5, 2005, Plaintiff saw Dr. Santivanez for her stomach, cramps and nausea.  AR 269.  She reported increased abdominal cramping.  AR 269.  Dr. Santivanez diagnosed Plaintiff with IBS and prescribed Vicodin and Phenergan.  AR 269.

On June 1, 2005, Mircea Truta, M.D., of Kings View Counseling Services, conducted an initial psychiatric evaluation of Plaintiff.  AR 307-312.  On mental status examination, Plaintiff was depressed and her affect was tearful at times and constricted.  AR 308.  She was alert and oriented with fair attention and concentration.  AR 308.  Her insight and judgment were fair.  AR 308.  Dr. Truta diagnosed Plaintiff with panic disorder without agoraphobia and major depressive disorder, recurrent, without psychotic symptoms.  AR 308.  Dr. Truta assigned Plaintiff a GAF of 50 and prescribed Lexapro to target depression and anxiety.  AR 307.  Plaintiff also was to start Klonopin to target anxiety and insomnia.  AR 307.

On June 16, 2005, Dr. Truta completed a medication evaluation of Plaintiff.  AR 303.  Plaintiff reported vomiting, abdominal cramps, inability to eat, poor sleep, and diarrhea at night.  AR 303.  On mental status examination, Plaintiff had a constricted affect with a depressed mood.  AR 303.  Plaintiff was prescribed Klonopin for anxiety, insomnia and Lexapro.  AR 303.  On July 25, 2005, a medication evaluation indicated that Plaintiff was non-compliant with her medications.  AR 299.  She was prescribed Xanax, Phenergan and Vicodin.  AR 299.

Between June 1, 2005 and March 23, 2006, Plaintiff received mental health therapy from Kings View Counseling Services.  AR 291-312.  Plaintiff attended individual therapy on seven occasions.  AR 291, 292, 293, 295, 297, 304, 305.

On June 16, 2005, Plaintiff sought follow-up treatment for her IBS and for complaints of jaw pain following a root canal.  AR 267.  Dr. Santivanez diagnosed Plaintiff with IBS and prescribed Vicodin and Phenergan.  AR 267.

On July 7, 2005, Plaintiff sought follow-up treatment from Dr. Santivanez for IBS.  AR 266.  He diagnosed Plaintiff with IBS and anxiety and prescribed her medications.  AR 266.

On August 15, 2005, Plaintiff saw Dr. Santivanez for complaints of lower back pain.  AR 265.  She reported increased anxiety and abdomen pain.  AR 265.  Dr. Santivanez diagnosed IBS, anxiety and GERD.  AR 265.  He prescribed Vicodin, Zantac and Xanax.  AR 265.

On September 16, 2005, Plaintiff saw Dr. Santivanez for complaints of back and chest pain, body and leg pain.  AR 264.  Plaintiff reported decreased energy.  AR 264.  Dr. Santivanez diagnosed IBS, GERD and Anxiety.  AR 264.  He prescribed Vicodin and Xanax.  AR 264.

On October 7, 2005, Plaintiff sought treatment from Dr. Santivanez for complaints of left ear pain and lower back pain.  AR 262.  He diagnosed her with fibromyalgia, IBS and GERD and prescribed Xanax and Vicodin.  AR 262.

On October 21, 2005, Plaintiff saw Dr. Santivanez for follow-up on back pain and for diarrhea.  AR 261.  Dr. Santivanez noted that Plaintiff's weight had changed from 119 to 116 pounds.  AR 261.  He diagnosed Plaintiff with fibromyalgia, IBS, GERD and hemorrhoids.  AR 261.  He prescribed medications including Vicodin and Xanax.  AR 261.

On November 18, 2005, Plaintiff sought treatment from Dr. Santivanez for abdominal pain and back pain.  AR 260.  Dr. Santivanez diagnosed IBS, fibromyalgia and anxiety.  AR 260.  He prescribed Vicodin and Xanax.  AR 260.

On December 15, 2005, Plaintiff saw Dr. Santivanez for back pain and right shoulder and wrist numbness.  AR 259.  Dr. Santivanez diagnosed IBS, fibromyalgia and back pain.  AR 259.  He prescribed her Soma.  AR 259.

On January 13, 2006, Plaintiff sought treatment from Dr. Santivanez for follow-up on abdomen and back pain.  AR 258.  Dr. Santivanez diagnosed IBS and migraine headache.  AR 258.  He prescribed medications, including Soma and Xanax.  AR 258.

On March 9, 2006, Plaintiff saw Dr. Santivanez for follow-up on her IBS.  AR 256.  She reported having no pain.  AR 256.  Dr. Santivanez diagnosed her with IBS and migraine headache.  AR 256.  He prescribed Xanax, Soma, Vicodin and Zantac.  AR 256.

On April 3, 2006, Plaintiff saw Dr. Santivanez for complaints of stomach pain and a stiff neck.  AR 255.  Dr. Santivanez diagnosed IBS and fibromyalgia.  AR 255.  He prescribed medication.  AR 255.

On April 13, 2006, Plaintiff saw Dr. Santivanez for follow-up of her medications, stomach cramps for 3 weeks and pain in her joints.  AR 253.  Dr. Santivanez diagnosed plaintiff with IBS and prescribed Zantac and other medications.  AR 253.

On April 14, 2006, Plaintiff saw Dr. Santivanez for complaints of nausea and stomach upset.  AR 252.  Dr. Santivanez diagnosed back pain and IBS.  AR 252.

On April 14, 2006, Dr. Santivanez completed a Medical Assessment of Ability to Do Work-Related Activities form.  AR 248-250.  Dr. Santivanez opined that Plaintiff could occasionally lift 10 pounds due to back pain.  AR 248.  She could stand/walk for a total of ½ hour in an eight-hour day and could stand/walk without interruption for 5-10 minutes because her knees hurt.  AR 248.  She could sit a total of ½ hour in an 8 hour day and sit for 5-10 minutes without interruption because of hemorrhoids.  AR 248.  She occasionally could climb, kneel, crouch, stoop, balance and crawl due to pain.  AR 249.  Dr. Santivanez opined that Plaintiff's reaching, handling, fingering, feeling, seeing, hearing and speaking were not affected by her impairment(s).  AR 249.  She had environmental restrictions of extreme temperatures, vibration, noise, chemicals, fumes and dust.  AR 250.  Dr. Santivanez opined that Plaintiff's back pain worsened with vibration, noises.  AR 250.  Dr. Santivanez further opined that the restrictions began on February 10, 2002.  AR 250.

On May 3, 2006, the ALJ requested updated documentation from Dr. Santivanez, including the bases for his conclusions, specific limitations of Plaintiff, the onset date of any restrictions, the number of times he saw Plaintiff and whether his opinions were based on subjective limitations as stated by Plaintiff.  AR 149.

### ALJ's Findings

The ALJ determined that Plaintiff met insured status requirements through December 31, 2008.  AR 14.  The ALJ also determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date.  AR 14.  The ALJ found that Plaintiff had the severe impairments of GERD (gastroesophageal reflux disease) and irritable bowel syndrome, but she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 14-15.  The ALJ further found that Plaintiff had the residual functional capacity to perform the full range of medium work that precluded lifting and carrying more than 50 pounds occasionally or 25 pounds frequently and standing, walking or sitting for more than six hours of an eight-hour workday.  AR 16.  The ALJ concluded that Plaintiff was capable of performing her past relevant work as a

1   receptionist, general clerk, insurance clerk, administrative clerk, pharmacy clerk and title clerk.

2   AR 17.  Therefore, the ALJ found that Plaintiff was not under a "disability."  AR 18.

3                                        **SCOPE OF REVIEW**

4           Congress has provided a limited scope of judicial review of the Commissioner's decision

5   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

6   the Court must determine whether the decision of the Commissioner is supported by substantial

7   evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla,

8   *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v.*

9   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

10  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401

11  (internal quotation marks and citation omitted).  The record as a whole must be considered,

12  weighing both the evidence that supports and the evidence that detracts from the Commissioner's

13  conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and

14  making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v.*

15  *Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

16  determination that the claimant is not disabled if the Commissioner applied the correct legal

17  standards, and if the Commissioner's findings are supported by substantial evidence.  *See*

18  *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

19                                            **REVIEW**

20          In order to qualify for benefits, a claimant must establish that she is unable to engage in

21  substantial gainful activity due to a medically determinable physical or mental impairment which

22  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

23  U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

24  such severity that she is not only unable to do her previous work, but cannot, considering her age,

25  education, and work experience, engage in any other kind of substantial gainful work which

26  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

27  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

28  Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated

2    regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

3    C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2006).  Applying the evaluation process in this case,

4    the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity for the relevant

5    time period; (2) has an impairment or a combination of impairments that is considered "severe"

6    (GERD and irritable bowel syndrome) based on the requirements in the Regulations (20 C.F.R.

7    §§ 404.1520, 416.920 (2006)); (3) does not have an impairment or combination of impairments

8    that meets or equals one of the impairments set forth in Appendix 1 to Subpart P of Part 404; and

9    (4) is able to perform her past relevant work. AR 14-17.

10    In this case, Plaintiff argues that the ALJ (1) improperly assessed the physician opinions;

11    (2) improperly assessed Plaintiff's credibility; and (3) failed to present all of Plaintiff's

12    impairments to the vocational expert.

### DISCUSSION

13

14    A.    Substantial Evidence

15        1.    Physician Opinion and Assessments

16            a.    *Treating Physician*

17    Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician, Dr.

18    Carlos Santivanez, and that more weight should be given to the opinion of a treating source.  It is

19    true that the medical opinion of a claimant's treating physician is entitled to "special weight."

20    *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  Reliance on the opinion of the treating

21    physician is based not only on the fact that he is employed to cure but also on his greater

22    opportunity to observe and know the patient as an individual.  However, a treating physician's

23    opinion is not conclusive as to a physical condition or the ultimate issue of disability.  *Matney v.*

24    *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

25    1989).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear

26    findings that set out specific, legitimate reasons for the rejection.  *Lester v. Chater*, 81 F.3d 821,

27    830 (9th Cir. 1995).

28

1    Here, the only opinions of Dr. Santivanez that Plaintiff argues were not properly

2    considered by the ALJ were the note Dr. Santivanez wrote in August 2004 and the April 2006

3    Medical Assessment of Ability to Do Work Related Activities form completed by Dr. Santivanez

4    in April 2006.  Plaintiff's Opening Brief, at p. 7.

5    First, the ALJ considered the note Dr. Santivanez wrote in August 2004, which stated:

6    "Patient is very well-known by my self.  She has Irritable Bowel Syndrome and at this time she is

7    unable to work."  AR 190.  The ALJ correctly determined that the note provided no information

8    regarding either specific limitations resulting from the irritable bowel syndrome or the expected

9    duration of the disability.  AR 16.  The ALJ rejected the opinion because the determination of

10   disability is reserved to the Commissioner.  AR 16.  As correctly determined by the ALJ and as

11   pointed out by the Commissioner, the opinion that Plaintiff is unable to work is not a medical

12   opinion, but is an opinion about an issue reserved to the Commissioner.  It is therefore not

13   accorded the weight of a medical opinion.  *See* 20 C.F.R. 404.1527(e)(1) ("A statement by a

14   medical source that you are 'disabled' or 'unable to work' does not mean that we will determine

15   that you are disabled.").

16   Next, the ALJ rejected Dr. Santivanez's form opinion issued on April 14, 2006, because

17   it was not supported by clinical findings.  AR 16-17.  An ALJ need not accept an opinion of a

18   treating physician if it is conclusionary and brief and is unsupported by clinical findings.

19   *Magallanes,* 881 F.2d at 751.  Here, Dr. Santivanez rendered his opinion regarding Plaintiff's

20   functional capacity in a brief form without a detailed explanation or supportive findings.  As

21   determined by the ALJ, Dr. Santivanez opined that Plaintiff's limitations had been in effect since

22   February 10, 2002, but there is no indication in the record that Dr. Santivanez treated Plaintiff

23   prior to 2004.  In addition, Dr. Santivanez cited findings of Plaintiff's low back pain, knee pain

24   and hemorrhoids to support his functional capacity determination.  AR 248-250.  However, as the

25   ALJ observed, there is no record that Dr. Santivanez diagnosed Plaintiff with knee pain and there

26   are only a few findings of back pain reported by Dr. Santivanez between 2004 and 2006.  AR

27   252, 270, 272, 276.

28

Plaintiff does not appear to contest the ALJ's assessment of Dr. Santivanez's opinion regarding her knee and back pain.  Instead, Plaintiff argues that the ALJ ignored "the significance of the irritable bowel syndrome and the hemorrhoids, and...that [she] is unable to sit for longer than 10 minutes without interruption."  Plaintiff's Opening Brief, at p. 7.  While Plaintiff correctly notes that Dr. Santivanez limited Plaintiff to sitting without interruption for 5-10 minutes, Dr. Santivanez's limitations were not based on her irritable bowel syndrome.  Indeed, Dr. Santivanez does not make any reference to Plaintiff's irritable bowel syndrome in his April 2006 functional assessment of Plaintiff.  Dr. Santivanez's April 2006 limitations on sitting are based solely on Plaintiff's hemorrhoids and that her "lower back hurts."  AR 248.  As discussed above, the ALJ rejected Dr. Santivanez's opinion regarding Plaintiff's back pain because there were only a few instances of noted back pain in the treatment records.  AR 16-17.  In addition, the ALJ also determined that claimant's alleged low back pain did not last continuously for twelve months.  AR 15.  Further, December 2003 lumbar spine x-rays were negative for fracture or dislocation and showed only mild hypolordosis and minimal levonconvex scoliosis of the thoracic/lumbar spine.  AR 155.

With regard to Plaintiff's hemorrhoids, other physicians reported generally benign clinical findings and did not identify any restrictions or functional limitations.  Specifically, in January 2003, Dr. Ying-Chien Lee diagnosed Plaintiff with mild external and moderate internal hemorrhoids, but did not identify any functional limitations related to the diagnosis.  AR 221-222.  In October 2003, Plaintiff complained of rectal bleeding/hemorrhoids, but was diagnosed with only a "superficial" fissure of the anal canal with skin tag.  AR 156.  In June 2004, Plaintiff's colonoscopy revealed internal hemorrhoids with no identified functional limitations.  AR 179.  Following an examination in July 2004, Dr. Au recommended only that Plaintiff apply cornstarch to her hemorrhoids and take Benefiber.  AR 196.  Accordingly, the ALJ properly rejected Dr. Santivanez's April 2006 opinion.  *Magallanes,* 881 F.2d at 751.

The Court is mindful of the recent decision in *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), where the Ninth Circuit reiterated and expounded upon its position regarding the weight

1  afforded to the opinion of a treating physician.  However, where the treating physician's opinion

2  is not supported in the first instance, as here, *Orn v. Astrue* is not instructive.

3                    b.      *State Agency Physician Opinion*

4          Plaintiff contends that the ALJ improperly relied on the opinion of the non-examining

5  state agency physician.  Plaintiff correctly notes that the opinion of a non-examining physician

6  cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either

7  an examining or treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

8  However, reports of a non-examining physician may serve as substantial evidence when they are

9  supported by other evidence in the record and are consistent with it.  *See Andrews v. Shalala*, 53

10  F.3d 1035, 1041 (9th Cir. 1995).  Here, clinical findings from other doctors support the

11  conclusion that Plaintiff can perform a medium level of exertion.  For instance, in January 2003,

12  she was diagnosed with only mild to moderate hemorrhoids.  AR 222.  A March 2003 view of

13  Plaintiff's abdomen showed no significant abnormality.  AR 218.  A September 2003 abdominal

14  ultrasound was normal.  AR 167.  A September 2003 pelvic ultrasound revealed an unremarkable

15  bladder, no ovarian masses and normal bowel loops.  AR 159.  An abdomen scan revealed a

16  normal liver, an unremarkable spleen and an unremarkable pancreas.  AR 160.  In October 2003,

17  Plaintiff was diagnosed with only a "superficial fissure" of the right post anal canal.  AR 156.  A

18  December 2003 x-ray of her lumbar spine and sacrum/coccyx showed only "mild hypolordosis"

19  and "minimal levonconvex scoliosis of the thoracic/lumbar spine."  AR 155.  A June 2004

20  radiological examination of her small bowel was unremarkable.  AR 184.  A June 2004

21  colonoscopy revealed internal hemorrhoids and gastritis, but was otherwise normal.  AR 179.

22  These findings are generally mild to moderate without any significant abnormalities.

23          Although there are indications in the record that Plaintiff was deemed to have "total

24  temporary disability" or was to remain off work for limited periods of time by her treating

25  physician (AR 219, 220), a determination of disability or an inability to work is a determination

26  properly left to the Commissioner.  20 C.F.R. 404.1527(e)(1).  Further, there is no identification

27  by any physician, other than Dr. Santivanez, of any specific functional limitations that are

28

1   inconsistent with the state agency physician's determination of Plaintiff's residual functional

2   capacity.  As noted, the ALJ properly discounted Dr. Santivanez's opinion.

3          2.      Credibility

4          Plaintiff contends that the ALJ did not properly evaluate her credibility.  The ALJ is

5   required to make specific findings assessing the credibility of Plaintiff's subjective complaints.

6   *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991).  In rejecting the

7   complainant's testimony, "the ALJ must identify what testimony is not credible and what

8   evidence undermines the claimant's complaints."     *Lester,* 81 F.3d at 834.  Pursuant to Ninth

9   Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and

10  impairments is unreliable, the ALJ must make a credibility determination with findings

11  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

12  claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "If the ALJ's

13  credibility finding is supported by substantial evidence in the record, we may not engage in

14  second-guessing."  *Id.* at 959.

15         Here, the ALJ made specific findings in assessing Plaintiff's credibility.  First, the ALJ

16  discounted Plaintiff's contentions about her ability to sit, stand, lift, walk and her activities of

17  daily living based on the lack of objective medical evidence in the record.  AR 17.  As discussed

18  above, the medical evidence revealed only mild to moderate findings.  The lack of medical

19  evidence, along with other factors, may support an ALJ's rejection of pain testimony.  *See*, *e.g.,*

20  *Tidwell v. Apfel*, 161 F.3d 599,602 (9th Cir. 1998).  In this case, the ALJ did not ignore or reject

21  Plaintiff's testimony solely because it was unsupported by objective evidence.  The ALJ also

22  made other findings in support of his determination that Plaintiff's complaints were entitled to

23  little evidentiary weight.

24         The ALJ next rejected Plaintiff's credibility as inconsistent with the objective medical

25  opinion of the state agency medical consultant.  AR 17.  The state agency medical consultant

26  affirmed that Plaintiff was "given full possible credit for pain symptoms and the medium RFC

27  was reflective of the expected function...."  AR 240.  An ALJ may rely on opinions from

28

1  physicians concerning the nature, severity and effect of the symptoms of which a claimant

2  complains when assessing credibility.  *Thomas*, 278 F.3d at 959.

3        Plaintiff also contends that the findings of the state agency non-examining physician were

4  the same as the treating physician and only the conclusions regarding the effect of the clinical

5  findings differed.  Plaintiff's Opening Brief, at p. 8.  The record reveals that Plaintiff's residual

6  functional capacity was reduced by the state agency physician based on "abdominal pain and GI

7  symptoms."  AR 242.  Contrary to Plaintiff's contention, her treating physician did not base his

8  functional capacity assessment on findings of abdominal pain and GI symptoms.  Plaintiff's

9  treating physician based his functional capacity assessment on back pain, knee pain and

10  hemorrhoids.  AR 248-250.  As discussed, the treating physician's assessment was inconsistent

11  with his own clinical findings.

12        Finally, the ALJ found Plaintiff's allegations less than credible based on the opinion of

13  the psychological consultative examiner who diagnosed Plaintiff with "possibly malingering."

14  AR 17.  Plaintiff objects to the ALJ's characterization of the consultant's diagnosis as "possibly

15  malingering."  Plaintiff's Opening Brief, at p. 9.  The record reveals that Dr. McDonald, the

16  consultative examiner, issued a primary diagnosis of "Rule out malingering."  AR 245.  The

17  ALJ's interpretation of this diagnosis as the possibility that Plaintiff may be malingering, as it has

18  not been ruled out, is reasonable.  It was within the ALJ's discretion to use ordinary methods of

19  credibility determination in deciding that Plaintiff's subjective pain claims were not credible.

20  *Fair v. Bowen,* 885 F.2d 597, 604 n. 5 (9th Cir. 1989).

21        Further, Dr. McDonald assigned Plaintiff a GAF of 70.  As indicated by the ALJ, a GAF

22  of 70 indicates only mild to slight symptoms or borderline mild to slight difficulty in social,

23  occupational or school functioning, but the person is generally functioning pretty well and has

24  some meaningful interpersonal relationships.  American Psychiatric Association, Diagnostic and

25  Statistical Manual of Mental Disorders, 32 (4th ed. 2000).  The ALJ determined that mild to

26  slight difficulties had no more than a "minimal" effect on her ability to work.  AR 15.

27        Based on the above, the ALJ has provided specific, cogent reasons for rejecting Plaintiff's

28  subjective complaints of pain.

1        3.      Hypothetical Question

2        Plaintiff contends that the ALJ erred by failing to present Plaintiff's symptoms of

3  vomiting, diarrhea, hemorrhoids and pain to the vocational expert.  "Hypothetical questions

4  posed to the vocational expert must set out *all* the limitations and restrictions of the particular

5  claimant . . . ."  *Embrey*, 849 F.2d at 422.  However, "exclusion of some of a claimant's

6  subjective complaints in questions to a vocational expert is not improper if the [ALJ] makes

7  specific findings justifying his decision not to believe the claimants testimony about claimed

8  impairments such as pain."  *Copeland v. Bowen,* 861 F.2d 536, 540 (9th Cir.1988).  As already

9  discussed, the ALJ provided specific and legitimate reasons supported by substantial evidence in

10  the record for rejecting Plaintiff's alleged difficulties.  Further, the state agency physician's

11  opinion regarding Plaintiff's RFC gave "full possible credit for pain symptoms and the medium

12  RFC was reflective of the expected function...."  AR 240.  Therefore, the ALJ's hypothetical to

13  the VE was entirely proper.

14                                **RECOMMENDATION**

15        Based on the foregoing, the Court finds that the ALJ's decision is supported by

16  substantial evidence in the record as a whole and is based on proper legal standards.

17  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

18  of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

19  Defendant Michael J. Astrue and against Plaintiff Gwen M. Garcia.

20        These findings and recommendations will be submitted to the Honorable Anthony W.

21  Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) court days

22  after being served with these findings and recommendations, the parties may file written

23  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

24  Findings and Recommendations."  The parties are advised that failure to file objections within

25  the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951

26  F.2d 1153 (9th Cir. 1991).

27

28        IT IS SO ORDERED. _____

                                            23

Dated:    **June 24, 2008**                        /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE